In Omaha. McComb refused to pay on these terms. In June, 1866, the entry of the re-ceipt of the $25,000 for the stock by the draft on Fant was cancelled by a cross entry. The bill prayed that the stock should be issued to McComb with all dividends paid in the interval. Under the ruling of the court, the only material point on the present hearing was whether an ownership of shares by contract was shown.

Jas. E. Gowen and Jeremiah S. Black, for complainant.

The contract passed the title. The books showed that the draft on Fant was accepted as payment. While the stock was below par the plaintiff was given no reason to suppose his right would be denied, and the remedy of the company was to sue on the draft.

R. E. McMurtrie, contra.

The contract was for cash, the draft being taken as cash. When that was returned unpaid—no shares having been issued—the situation of the parties was precisely that of a seller for cash who receives a check on a bank where there are no funds, and the goods have not been delivered. The purchaser cannot keep the seller forever in the position of one who retains goods, as security for the price. The act of the company in cancelling the credit by the cross entry in June, 1866, showed they had abandoned the contract. After that the position of Mc-Comb was that of any other buyer for cash, where nothing had been paid and no delivery made. No title ever passed. It was merely contractual, and that ended by the neglect to pay within a reasonable time.

McKENNAN, Circuit Judge. The Credit Mobilier of America is a corporation established by the laws of the state of Pennsylvania, and its officers, who represented it in the transaction upon which the complainant founds his title to relief, appear to have been authorized to receive subscriptions to its capital stock, and to issue such stock to subscribers on payment of its par value in cash, and they may have had incidental authority to allow a reasonable time for such payment. But they had no power to give an indefinite extension of credit, and the complainant could not by any arrangement or combination with them obtain it. Dealing with the ministerial officers of a corporation touching a subject over which they had only such control as was clearly conceded to them, it was his duty to inquire into the source and extent of their authority, and he is, therefore, chargeable with knowledge of its limitations, and of the necessary conditions under which they could bind their constituent. Upon the admitted facts in the case, there was no payment or authorized waiver of payment of the stock for which the complainant seeks to make the defendants accountable. He did not, therefore, acquire any title to the stock.

This view of the case renders it unnecessary to consider whether the complainant's inaction, or imputed acts of disclaimer on his part, or his alleged assent to other dispositions of the stock, may have induced or sanctioned the issue of the stock of the whole capital to other persons, so that it would be against equity to sustain his present contention. Irrespective of these considerations, the court is of opinion that he is not entitled to relief, and his bill is therefore dismissed with costs..

McCOMB (CHICAGO, ST. L. & N. O. R. CO. v.). See Case No. 2,670.

## Case No. 8,710.

### McCOMB v. ERNEST.

[The case reported under above title in 1 Woods, 195, is the same as Case No. 3,155.]

## Case No. 8,711.

### McCOMBER v. CLARKE.

[3 Cranch, C. C. 6.] [1]

Circuit Court, District of Columbia. Dec. Term, 1826.

NOTES—VOLUNTARY INDORSER—PRESUMPTION—RIGHTS.

If a man writes his name in blank on the back of a note to which he is not a party either as payee or indorsee, before the note comes into the hands of the plaintiff, the presumption is that he did so for the purpose of making himself liable as the indorser of an ordinary negotiable note, and as if it had been made payable to himself or order, and not otherwise; and he is entitled to all the rights of an indorser.

[Cited in Buck v. Hutchins (Minn.) 47 N. W. 809.]

Assumpsit, on a note made by one Mozart, payable to the plaintiff, or order, and indorsed in blank by the defendant. The first count charged the defendant as maker of a note, of similar import as that signed by Mozart. The second count was upon an express guaranty of payment of the note of Mozart. The third count also was upon the guaranty. The fourth count was upon a promise in writing to pay the debt due by Mozart to the plaintiff.

Mr. Randall and R. S. Coxe, for plaintiff, contended that they have a right to write a promissory note over the name of the defendant, similar to that signed by Mozart; and cited Am. Prec. 49, 149; Collis v. Emett, 1 H. Bl. 313; Russel v. Langstaffe. 2 Doug. 514; Josselyn v. Ames, 3 Mass. 274; Moies v. Bird, 11 Mass. 436; Violett v. Patton, 5 Cranch [9 U. S.] 142.

Mr. Moffit, contra. The Massachusetts cases are under the peculiar law of that state.

Mr. Swann, on the same side. If the na-

[1] [Reported by Hon. William Cranch, Chief Judge.]